[Civ. No. 2271. First Appellate District.—February 11, 1918.]

## MRS. ADA THOMPSON, Appellant, v. OTTO NEWMAN, Respondent.

CONTRACT—ESTIMATE OF VALUE OF TIMBER—CHOOSING OF "ARBITRATORS" — NATURE OF AGREEMENT — APPRAISEMENT.—A contract between the parties to a pending action with respect to their rights in growing and down timber providing for the choosing of "arbitrators" to estimate the value of the timber, and stipulating that neither party should offer any evidence, but that the arbitrators should go upon the ground and make their estimate from their own examination, is not a contract for arbitration under sections 1284 and 1285 of the Code of Civil Procedure, but merely an agreement for the appointment of appraisers to determine the value of the timber, and therefore the rules governing arbitration proceedings are not required to be followed.

ID.—VALUATION OF TIMBER—RESULT OF JOINT LABOR OF APPRAISERS—EVIDENCE.—Evidence to the effect that although the so-called arbitrators went on the land together for the purpose of making the appraisement and, while so doing, separately examined and valued particular portions of the timber and then met and compared notes and finally concurred in the valuation of the whole, does not sustain the contention that the valuation of the timber was not the result of the joint labor and judgment of the appraisers.

ID.—REPORT OF ARBITRATORS—TIME.—Objection to an appraisement of timber, made under a contract, that the appraisers did not make their report within the time provided in the agreement, is without merit, where time was not made of the essence of the agreement, and the delay was caused by the refusal to act of the arbitrator selected by one of the parties.

APPEAL from a judgment of the Superior Court of Mendocino County.  J. Q. White, Judge.

The facts are stated in the opinion of the court.

Preston & Preston, for Appellant.

Robert Duncan, for Respondent.

LENNON, P. J.—On the sixth day of October, 1914, plaintiff and defendant entered into a written agreement by the terms of which they agreed to settle a controversy existing between them ''with respect to their rights in the growing and down timber'' standing and lying upon certain designated land.

The terms of the agreement were in substance these: Within thirty days after the report of ''arbitrators'' who were to be chosen by the parties according to the method provided by the contract, the plaintiff promised to pay to the defendant the sum estimated by the said ''arbitrators'' as the value ''of all the down and standing redwood and pine timber . . . suitable for merchantable lumber and suitable for the making of ties.''  The defendant agreed that upon such payment he would make, execute, and deliver to the plaintiff, her heirs and assigns, a deed of all of the said timber.  The contract in controversy, among other things, provided that ''each of said parties . . . shall appoint and name one person as an arbitrator and the two arbitrators so appointed by the parties . . . shall agree upon and appoint a third person to act as arbitrator in said matters and . . . each and all of said arbitrators shall be men experienced in buying, selling or estimating of redwood or pine timber in the county of Mendocino, state of California. . . .''

The two parties first named in the contract as ''arbitrators'' failed to agree upon a third person, and one of them subsequently refused to act.  In his place and stead, the judge of the superior court of Mendocino County, pursuant to a provision in the contract covering such a contingency, designated another person to act, and he with the person appointed in the first instance, and who had consented to act, met on the nineteenth day of April, 1915, surveyed the timber and appraised its value at the sum of $190.  Thereafter on April

26, 1915, plaintiff tendered to defendant the sum of $190 and demanded a conveyance of the timber. Defendant declined the tender and refused to execute the conveyance.

Thereupon the plaintiff brought this action for specific performance, wherein the court below, in effect, found that although designated in the contract as arbitrators, the parties who made the valuation were intended to be and were in fact but mere appraisers and that they had made a fair, just, and reasonable estimate of the quantity and value of the timber which was the subject matter of the contract here. From the judgment entered in favor of the plaintiff, decreeing specific performance, the defendant has appealed.

It is not claimed that the estimate of the appraisers was the result of collusion or fraud, but merely that their estimate was not in accord with the evidence adduced at the trial.

While the record does show some evidence to the effect that the timber was worth more than the value placed upon it by the "arbitrators," nevertheless, the record shows other evidence which fixes the value of the timber at about the sum of $190. In short, there is a substantial conflict in the evidence adduced upon this phase of the case, and, moreover, the contract in terms provided that the "arbitrators'" estimate, when made, was to be final and conclusive upon the parties to the contract.

The contention that the "arbitrators" did not proceed legally to make the appraisement is grounded upon the fact that before proceeding to their duties, they were not sworn to faithfully perform the same, and did not notify the parties to the contract of the time when the timber would be examined and valued. This contention involves the proposition that the contract in controversy was an agreement to submit to arbitration and not intended for the purpose of merely making an appraisement. Consequently it is argued that the result of the appraisement was of no avail in the absence of a showing that they had complied with the provisions of sections 1284 and 1285 of the Code of Civil Procedure which provide that "arbitrators have power to appoint a time and place for hearing . . . to hear the allegations and evidence of the parties" and, "before acting, they must be sworn before an officer authorized to administer oaths, faithfully and

fairly to hear and examine the allegations and evidence of the parties in relation to the matters in controversy. . . ."

That the contract in controversy was not "a submission to arbitration," in the sense contemplated by the provisions of the code sections last cited, is shown, we think, by the terms of the contract itself which expressly provide that "Neither of the parties . . . shall offer any evidence before said arbitrators but that said arbitrators shall go upon the ground and make their estimate from their own examination. . . ."

True, the contract in terms specifically uses the word "arbitrators," but that fact does not conclusively control the construction of the agreement. (*Foster* v. *Carr,* 135 Cal. 86, [67 Pac. 43].) The term "arbitrators" evidently was incorrectly employed to designate the character and capacity of the men who had been, or might be, agreed upon to carry out the terms of a contract which, when read in its entirety, purported to provide for nothing more nor less than a mere appraisement.

There is a clear distinction between an arbitration and an appraisement. "An arbitration presupposes a controversy or a difference to be tried and decided, and the arbitrators proceed in a judicial way, sometimes as an adjunct to a court of justice. Their investigation is in the nature of a judicial inquiry, and rules of procedure must be strictly observed or their award will be void. On the other hand, an appraisal or valuation is generally a mere auxiliary feature of a contract of sale, the purpose of which is not to adjudicate a controversy, but to avoid one. Thus, if A and B contract, the former to sell, and the latter to buy, certain property at the value thereof as fixed by X, Y and Z, the latter are appraisers, not arbitrators, and are not governed in their proceedings by the rules relating to arbitration." (*Omaha Water Co.* v. *City of Omaha,* 162 Fed. 233, [89 C. C. A. 205, 15 Ann. Cas. 498].) In the case of *California Annual Conf. of M. E. Church* v. *Seitz,* 74 Cal. 287, [15 Pac. 839], the court said: "There is scarcely a day in which in commercial transactions the valuation of property, or estimate of damages, is not intrusted to third parties, and no one has as yet dreamed of looking upon them as arbitrations, and subjected to all the formalities imposed on them by the Revised Statutes, with the paraphernalia of oaths, witnesses and notices of trials. It is most frequently confided to the personal skill, knowl-

edge, or experience, or even acquired information of the appraisers.''

While the preamble of the contract in controversy discloses that there were two suits pending between the parties in the superior court of the county of Mendocino, involving their rights to the land in question and the timber thereon, and that they were desirous of settling between themselves such litigation and all claims involved therein, nevertheless we think that that very preamble, considered in conjunction with the specific terms of the contract, shows that its primary purpose was to avoid existing litigation rather than to adjudicate it, and that in pursuance of that purpose the parties had merged all of their differences into an executory contract of purchase and sale of the disputed timber, which sale was to be consummated when the value of the timber was ascertained in the manner contemplated by and provided for in the contract. In short, the only matter remaining at the time of the execution of the contract to be determined between the parties was the value of the timber in question, and this fact, considered in connection with the proviso in the contract that neither of the parties thereto should offer any evidence to the ''arbitrators,'' who were required to go upon the land and make their own estimate of the quantity and value of the timber, compels the conclusion that the contract in controversy called for a mere appraisement rather than a submission to arbitration in the strict sense of the term.

The evidence to the effect that although the so-called arbitrators went on the land together for the purpose of making the appraisement and, while so doing, separately examined and valued particular portions of the timber and then met and compared notes and finally concurred in the valuation of the whole, obviously does not sustain the contention that the valuation of the timber was not the result of the joint labor and judgment of the appraisers.

There is no merit in the contention that the appraisers did not make their report within the time provided in the agreement and that, therefore, they were without power to report at all. Time was not made the essence of the agreement and any delay therein could be compensated by the payment of interest on the amount fixed by the appraisers. (Civ. Code, sec. 1492.) Moreover, the delay appears to have been caused

by the refusal to act of the ''arbitrator'' selected by the defendant and was, as well, without prejudice to the defendant. Judgment affirmed.

Kerrigan, J., and Beasly, J., *pro tem.*, concurred.