[Civ. No. 13280. Second Dist., Div. Two. Mar. 27, 1942.]

RIVES-STRONG BUILDING, INC. (a Corporation), Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant.

Edmund Nelson and William C. Day for Appellant.

Vernon Bettin, L. W. Andrews and Mortimer Kline for Respondent.

STEPHENS (Jess E.), J. pro tem.—Appeal by defendant from a decree of the superior court nullifying an award made by a majority of a board designated in a lease as "arbitrators," and directing further proceedings in the trial for the purpose of determining the fair, just and reasonable monthly rental to be paid by defendant.

Appellant's predecessor and respondent entered into a lease on October 1, 1925, by which respondent, as lessor, leased to appellant's predecessor, as lessee, the ground floor and certain other portions of a business building in Los Angeles for banking purposes, for a term of 24 years and 5 months. The lease was not introduced into evidence, but the complaint alleged and the court found "that said lease by its terms provided a fixed rental for the first four years and five months of said term, ending December 31, 1929; and that thereafter the rental for each succeeding five-year period was to be adjusted up or down as conditions warranted, so as to arrive at a fair and just rental of said premises, and in that behalf, in fixing the rental for the next five-year period,—commencing January 1, 1930, and ending December 31, 1934,—the parties, between the first day of August and the first day of October, 1929, would give consideration to the various factors and elements affecting the situation, and by mutual agreement fix the rental for such period; and if after due consideration the parties were unable to agree upon the amount of rental for such period, and there was such difference of opinion as resulted in a controversy between the parties, then that the amount of said rental for said five-year period would be determined by arbitration, and for that purpose each party to the lease should appoint one arbitrator at least eighty days prior to January 1, 1930, and notify the other party in writing of such appointment, and the two arbitrators so selected should thereupon and within the next five days name a third arbitrator, mutually agreed upon by them, and the three arbitrators so selected should proceed with the arbitration, to the end that they should, within five days thereafter, make an award determining upon a fair and just rental for the demised premises

for the ensuing five-year period subsequent to January 1, 1930. Said lease further provides that the amount of rental to be paid for each ensuing five-year period, subsequent to said five years expiring December 31, 1934, should be determined between August 1st and October 1st of the last year of each such five-year period, in the same manner, by conferences and consideration of the then existing conditions and such changes as might have intervened, affecting the situation, and by agreement of the parties; and in event there was such controversy with respect to the matters, that the parties could not agree within said time upon the amount of rent to be fixed for the next five years, the same should be determined by arbitration in the manner above specified."

On April 10, 1929, a modification of the lease was entered into between the parties, fixing the rental for the five-year period beginning January 1, 1930, permitting lessee to make certain alterations, and making some minor modifications not affecting the rental, and in all other respects leaving the lease unchanged.

When the parties attempted by negotiation to fix the rental for the period commencing January 1, 1940, they were unable to agree, and thereupon, pursuant to the lease, each appointed an "arbitrator" and these two appointed a third. After making such investigation as they deemed necessary, interviewing the parties, inspecting the premises, collecting data from various sources and otherwise satisfying themselves that they had acquired all the necessary information, the three members held a final meeting and two of them agreed upon and signed an award fixing the rental for the period. No formal hearings were had at which witnesses were sworn to testify or subjected to cross-examination, and no notices of meetings were given to lessor or lessee.

Respondent (lessor) thereafter served upon appellant a written notice rejecting the award as being contrary to law and particularly to the provisions of the Code of Civil Procedure with respect to arbitration and award, and then brought the present action seeking to set aside the award and praying that the court "determine the fair, just and reasonable monthly rental of said premises to be paid by defendant and received by plaintiff during the five-year period commencing January 1, 1940, and ending December 31, 1944." Defendant (appellant) answered and also filed a cross-complaint seeking confirmation of the award. Upon the trial it

was stipulated that the court first hear and determine the issue whether the award be vacated as prayed in the complaint or confirmed as requested in the cross-complaint, and that all other issues be reserved for future determination.

The trial court found "that the arbitrators acted in good faith but they were not informed and did not know that as arbitrators they were required to have a hearing or hearings and that the parties to the arbitration had the right to be advised in advance of the time and place of such hearings and the right to attend and offer evidence for the consideration of the arbitrators, question witnesses and respectively present their case to the arbitrators." The court also found, however, "that it is not true that said arbitrators or some of them refused to consider evidence pertinent or material to the controversy or refused to take into consideration pertinent or material facts in reaching a determination of the controversy." The court then proceeded to find that the arbitrators had failed to observe the requirements and to accord the parties the rights to which they were entitled under the provisions of the Code of Civil Procedure governing arbitration and award, and concluded therefrom that the arbitrators had been guilty of misconduct as defined by the statute and "that no arbitration was conducted by said arbitrators as required by law." There is nothing in the findings or decree in any way reflecting upon any of the three appointees or questioning their good faith or ability, or the thoroughness or accuracy of their work. The decree declares the award null and void and directs further proceedings to determine the fair, just and reasonable monthly rental, etc.

Appellant does not attack the findings, but contends that they do not support the conclusions of law; that a proper construction of the lease discloses that it was never intended by the parties as, and did not amount to, an agreement for formal arbitration of a controversy as contemplated by Code of Civil Procedure, section 1280, et seq., but was a simple method of determining the rental value at the beginning of each five-year period through the customary method of accepting a valuation fixed by three disinterested appraisers. It is apparent, therefore, that the determination of this appeal rests upon the question of whether or not the provisions of the lease constitute an arbitration agreement as contemplated by Code of Civil Procedure, section 1280, et seq., or possibly as recognized by common law. It should be noted that the

provisions of the Code of Civil Procedure governing this subject have undergone substantial change since the making of the lease, and the latter should be construed in the light of the statute as it existed at that time, notwithstanding the subsequent modification which in no way affected the provision now under consideration. However, in the view we take of it this does not assume the importance accorded it in the briefs.

The subject of agreements for submission of controversies to arbitration has engaged the attention of the courts since very early times. They were frowned upon by the courts as being a substitute for the established judicial machinery, and it was thought that individuals should not be deprived of the right to have their controversies heard by the courts, even by their own acts. It was well established that courts would not enforce an executory agreement to submit to arbitration. (*Levy* v. *Superior Court*, 15 Cal. (2d) 692, 698, 699 [104 Pac. (2d) 770, 129 A. L. R. 956].) In the early case of *Holmes* v. *Richet*, 56 Cal. 307, 314 [38 Am. Rep. 54], we find a quotation from Coleridge, J., in the House of Lords in which he discusses the subject and points out the recognized difference between an agreement to arbitrate an existing controversy and a provision in a contract by which valuations are to be determined by reference to third persons as appraisers. This case is also cited by the Supreme Court in *Blodgett Co.* v. *Bebe Co.*, 190 Cal. 665, 668 [214 Pac. 38, 26 A. L. R. 1070], in which the same distinction is discussed and recognized. The general subject was incorporated in our codes (Code Civ. Proc., sec. 1281, et seq.), and this statute when enacted confined such contracts to controversies "which might be the subject of a civil action between" the parties thereto. As the determination of values or other calculations involved in voluntary contracts between individuals, and therein for convenience left to third persons, could not be the subject of a civil action, it seems clear that the statute was not intended to apply to this type of agreement. In other words, the statute recognized the distinction that had been long established by the courts.

In *California Annual Conference of the M. E. Church* v. *Seitz*, 74 Cal. 287 [15 Pac. 839], defendant was the owner of a parcel of land and one Perkins, plaintiff's assignor, owned certain buildings upon it. Defendant leased to Perkins with the provision that at the expiration of the term the latter should have the option to remove the buildings or to require

defendant to take them at a valuation "to be ascertained by two persons, one to be chosen by each party; and in case the persons so chosen disagree those two shall choose an umpire whose decision shall be final and binding on the parties." Pursuant thereto the persons were selected and determined upon a figure, but defendant refused to pay and plaintiff sued for the amount of the award. Defendant contended that the agreement amounted to an arbitration and that the award was invalid because the arbitrators were not sworn, the parties had no notice of meetings and no opportunity to be heard. After stating that "the question presented then is whether the agreement amounts to a submission to arbitration," the court said:

"There are two time-honored rules in relation to arbitrators,—one that courts will not enforce an agreement to submit to arbitration, or in other words, that it can be revoked; and the other that arbitrators must give notice of their sessions so as to afford the parties a right to be heard. These rules rest upon the same idea, viz., that an arbitration is a substitute for proceedings in court. It being considered against sound policy to allow parties to deprive themselves of their right of resort to the courts, agreements to that effect are not binding so long as they are executory; but if the parties choose to resort to other tribunals, such tribunals are held to the more important rules which govern courts in their proceedings.

"It was found, however, that to apply the above rules to all agreements in which parties regulated their action by the determination of third persons would interfere with the ordinary transactions of mankind, and put unnecessary clogs upon business. Accordingly, in the well-considered case of *Scott* v. *Avery*, 5 H. L. Cas. 811, it was held that a condition in a policy of insurance in a mutual company that the loss should be 'ascertained and settled by the committee' was not a submission to arbitration in its proper sense, but was a condition precedent to the right of action. Similar decisions have been made in this and other states. (*Holmes* v. *Richet,* 56 Cal. 307 [38 Am. Rep. 54] ; *Loup* v. *California Southern R. R. Co.,* 63 Cal. 97, 103; *Cox* v. *McLaughlin,* 63 Cal. 196, 207 ; *Old Saucelito etc. Co.* v. *Commercial U. A. Co.,* 66 Cal. 253 [5 Pac. 232] ; *Adams* v. *South British etc. Ins. Co.,* 70 Cal. 198 [11 Pac. 627] ; *Carroll* v. *Girard Fire Ins. Co.,* 72 Cal. 297 [13 Pac. 863] ; *President etc. of D. & H. C. Co.* v. *Penn-*

*sylvania Coal Co.*, 50 N. Y. 250; *Hudson* v. *McCartney*, 33 Wis. 331, 344; *Haley* v. *Bellamy*, 137 Mass. 357, 359; *Flint* v. *Pearce*, 11 R. I. 576, 577; *Gauche* v. *London Ins. Co.*, 10 Fed. 347, 355; *Fox* v. *Hempfield R. Co.*, Fed Cas. 5,010, 3 Wall. Jr. 245.)

"These cases hold that a contract by which the value of property or the amount of damage is, for the purpose of the contract, to be fixed by third persons, is not a submission to arbitration, and therefore to enforce it does not trench upon the jurisdiction of the courts. Now, if this is so,—if such a proceeding is not analagous to the investigation by a court of a controversy between the parties,—why need it be conducted according to the rules which govern courts in their investigations? We think that it need not; that the proceeding is a mere appraisement or valuation, which although binding upon the parties, is not the submission of a controversy to arbitration, and is, therefore, not subject to the rules which govern arbitrators. And to this effect are the best considered cases."

After reviewing and quoting from numerous cases the court then quotes from a Massachusetts case as follows:

" 'A reference to a third person to fix by his judgment the price, quantity or quality of material, to make an appraisement of property and the like, especially when such reference is one of the stipulations of a contract founded on other and good considerations, differs in many respects from an ordinary submission to arbitration. It is not revocable. The decision may be made without notice to or hearing of the parties, unless such notice and hearing be required by express provision or reasonable implication; and it may be made upon such principles as the person agreed on may see fit honestly to adopt, or upon such evidence as he may choose to receive.' (See *Garred* v. *Macey*, 10 Mo. [161] 164; *Willingham* v. *Veal*, 74 Ga. [755] 759; *Gustaveson* v. *McGay*, 12 Daly [423] 427.)"

Following this principle, it has been held that where the parties have agreed that a valuation shall be fixed in a certain manner they are entitled to have it fixed in that manner and not by a court in lieu thereof. (*Hooper* v. *Los Angeles Valve & F. Co.*, 55 Cal. App. 17, 21 [202 Pac. 911]; *Luedinghaus Lbr. Co.* v. *Luedinghaus*, 299 Fed. 111, 115 [U. S. Circuit Court of Appeals, Ninth Circuit].)

Applying what has been said in these cases to the matter

before us, it is difficult to see any difference in principle between a reference to determine rental value for a period of five years and one for the determination of the value of land, or of buildings, or of the amount and value of standing timber.

Turning to the lease itself to determine what the parties intended, we find a very simple wording, with no conditions or restrictions placed upon the persons named, no method of procedure suggested and no hearings or notices mentioned. In fact, the provision is so aptly worded for the purpose of requiring a mere appraisal or valuation that if the word "appraiser" is substituted for the word "arbitrator" in the lease no serious contention could be made that the parties intended it to be a statutory arbitration agreement. The use of the word "arbitrator" is of course not controlling. (*Thompson* v. *Newman*, 36 Cal. App. 248, 251 [171 Pac. 982].) Particularly is this true in view of the almost interchangeable manner in which these terms are commonly used in agreements.

Rental adjustments by appraisers at stated intervals are now extremely common in long term business leases, and by their very nature they require prompt action. They are usually intended to avoid, rather than invite, long hearings in the nature of court procedure. That the parties herein had this in mind is indicated by the provision that the award should be made within five days. The three persons appointed were in fact all expert realtors, experienced as appraisers. It is obvious from an examination of the transcript that they considered themselves appointed for just one purpose, viz., to determine what in their judgment was a fair and just rental for the premises for the five-year period. From their actions in interviewing the parties, requesting certain information, inspecting the premises, etc., this construction of their duties by the three appointees must have been obvious as well to the parties. It does not appear that prior to the award either party made any objection to this procedure or made any demand or even request for a formal hearing. Of course, this would not be necessary if it was in fact a statutory arbitration agreement, but it is a circumstance indicating a construction of the document acquiesced in by the parties themselves. The statement is made in respondent's brief that the appraisers refused to permit the president of respondent corporation to appear at a hearing, but no such finding is made and the only

testimony in that connection was by Mr. Strong, who said, "I simply asked him [Mr. Culver, one of the appraisers] if I could be there," and "he said it was not necessary for me to be there."

Counsel for respondent strongly urge that appellant has adopted a new theory on appeal that is inconsistent with the theory upon which the case was tried, and cite authorities which undoubtedly support the general rule contended for. It is not necessary to discuss the existence of the rule, but only to determine its applicability to the present proceeding. It should be remembered that respondent here is the plaintiff, who is seeking to have the award set aside for the reason that the so-called arbitrators did not comply with the requirements of the statute governing the subject of arbitration. The pertinent provisions of the lease were before the court and are set forth in the findings. The evidence describes in great detail exactly what the "arbitrators" did in performing their duties as they understood them, all of which the trial court specifically found was in good faith. It is difficult to see how the evidence could have been more full and complete, regardless of the theory of the trial. If, then, with all the facts before us in the findings, including the wording of the document which was the basis of the award, it appears that the legal conclusions of the trial court thereon were erroneous, does the rule go so far as to require us to follow the trial court in this error merely because counsel for defendant (appellant) contended for too much? We do not think so, nor would the ends of justice be served by such application of a rule established by the courts themselves as a means of furthering justice.

The burden was upon plaintiff to show that the award was invalid. If it chose to attack the award for alleged procedural defects, and the trial court found that the statutory processes required in cases of arbitration had not been followed, this still does not invalidate it if, in fact and in law, such omitted procedure was not at all necessary to the validity of the award.

We hold that the lease provision under consideration was not an arbitration agreement within the contemplation of the statute, but that it constituted a method devised and agreed upon by the parties for determining the rental value of the property for the period in question, and that the persons

chosen had no other duty to perform than to make this valuation. There were no conditions or restrictions or procedure laid down for them, and so far as appears from the findings and the evidence they went about their duties in good faith and to the best of their abilities, in the general manner customarily followed by appraisers. We therefore find no basis for declaring the award invalid. On the other hand, no arbitration agreement being involved, there is, of course, no basis for the action requested by the cross-complaint.

The judgment is reversed and judgment is ordered for defendant on the complaint and for cross-defendant on the cross-complaint. Appellant to recover costs.

Wood (W. J)., Acting P. J., and McComb, J., concurred.