[Civ. No. 3143.   Fourth Dist.   Feb. 23, 1945.]

ROBERT B. COCKRILL et al., Respondents, v. K. G. MURPHIS, as Executor, etc., Appellant.

L. M. Linneman for Appellant.

Lawrence W. Young for Respondents.

BARNARD, P. J.—This is an action to recover for the use of certain land during the crop year 1941-1942. The real plaintiffs, the Cockrills, will be referred to as the plaintiffs, and the original defendant, S. Stamoules, will be referred to as the defendant, although he died after judgment and his executor has been substituted.

This action involves a crop of barley raised on a certain 150 acres of land. In 1934, a corporation which owned the land executed and delivered to the plaintiffs a note for $1,962.50, secured by a deed of trust on 80 acres thereof. At the same time, it executed another note for the same amount secured by a deed of trust on the other 70 acres in favor of a Mr. and

Mrs. Ritter, whose rights were assigned to the plaintiffs insofar as this action is concerned. These notes were due and payable on January 1, 1942, and were not paid. The powers of this corporation had been suspended in 1937 for failure to pay the state corporation tax and a number of liens for taxes, state and federal, appeared against the property.

In the fall of 1941, the defendant, without the permission of anyone and as a trespasser, entered upon said land and planted a crop of barley thereon. Early in May, 1942, as this crop was rapidly maturing, the plaintiffs employed Mr. Savage, an attorney, to obtain a settlement from the defendant and to foreclose the deeds of trust and to protect their interests either by taking possession of the land and crops or by instituting receivership proceedings. After several conferences an agreement was reached to the effect that the defendant would pay whatever was right for the use of the land and that it should be left to one Pucheu, as sole arbiter, to determine what was right under the circumstances. Pucheu met with both parties, who gave him the facts, with a list of the expenses incurred and estimated to be incurred in producing and harvesting the crops. Pucheu later made an ''award'' in writing which was that the crop should be harvested, that all expenses of producing the crop should first be deducted and paid to the defendant, that one-third of the balance should be paid to the defendant and two-thirds to Mr. Savage for the owners of the trust deeds, and that the harvesting and sale of the crop should be carried on by the defendants in consultation with Mr. Savage. The defendant hurriedly harvested the crop and kept the proceeds, and this action followed.

The complaint alleged the general facts and, among other things, alleged that the corporation mentioned had become insolvent and lost its corporate charter; that the value of the land was inadequate to pay the amounts due on the deeds of trust; that the defendant, when contacted by Savage, stated that he was willing to pay the plaintiffs a reasonable amount for the use of the land and suggested that what was fair and reasonable be submitted to a single arbiter; that the parties agreed on Pucheu as sole arbiter and that an award was made on June 1, 1942; and that the defendant had refused to comply with the award. It was further alleged on information and belief that the net amount received for the crops after deducting expenses was $3,690 and the prayer was for judgment against the defendant for $2,460, with interest from

June 15, 1942. During the trial, and on order of the court, the complaint was amended to bring in the corporation that owned the legal title and its directors as parties to the action. This was done, these parties were served but failed to appear, and their default was entered.

The court found in all respects in favor of the plaintiffs and, in accordance with the evidence as to the net amount received from the crops in question, entered judgment in favor of the plaintiffs for $955.13, with interest thereon from June 15, 1942, and this appeal followed.

The appellant's main contention is that the evidence fails to show any agreement for a real submission to an arbitration, that what occurred was merely an appraisal of the rental value of this property, and that it follows that there was no valid award which could serve as a basis for the judgment. In this connection it is argued that the plaintiffs, as beneficiaries under the deeds of trust, were not entitled to the rents, issues and profits of the encumbered property; that the question of liability of the defendant to the plaintiffs was not submitted to or passed upon by the so-called arbitrator; and that no liability on the part of the defendant could be or was established by the appraisal or award which was made.

It may first be observed that this was something more than a mere appraisal of the rental value of the property in the ordinary sense. The defendant was a trespasser who had entered the property without right and who had produced a crop which was nearly ready to harvest. The plaintiffs had given notice under the deeds of trust and were proceeding to foreclose the same. As alleged in the complaint, and found by the court, plaintiffs' security was inadequate to pay the full amount due on the deeds of trust and the plaintiffs could and would have procured a receiver to take possession of the land and crops had a settlement not been reached with the defendant. ██ Under these circumstances the agreement with the defendant was made and a sufficient consideration therefor appears. When called in the defendant said: "I want to pay. I knew I would have to pay somebody. I want to do what is right." When both parties were talking the matter over with Pucheu the defendant told Pucheu that he wanted him to arbitrate the matter and "do what was fair" with reference to the barley crop. Pucheu said he would do this and both of the interested parties agreed "to abide by his award." In his written award Pucheu said: "You have both

submitted to me as arbiter the question as to what is fair with reference to the one hundred and fifty-acre barley crop planted by Mr. Stamoules near Mendota. I have given the matter careful consideration and as arbiter now make the following award. (Here follows the award as above referred to.)

There is no question that this was not a statutory arbitration as the statutes apply only to written arbitration agreements. (Code Civ. Proc., §§ 1280 and 1281.) It may also be conceded that some of the elements of a common law arbitration are here absent, but it does not follow that the plaintiffs were not entitled to a judgment. Taking the evidence most favorable to the plaintiffs the defendant, with full knowledge of the situation and position of the plaintiffs, agreed to do the right thing under the circumstances and to pay to them, for the use of the land, whatever was right and proper under the existing circumstances, as fixed by a third person whom the defendant himself selected, and agreed to abide by the award that should thus be made. There was a sufficient agreement of the parties and while the matter was not strictly an arbitration it constituted a method devised and agreed upon by the parties for determining what should be paid to the plaintiffs for the use of this land under the unusual circumstances then existing. Under such circumstances it makes no difference whether or not this was technically an arbitration and, in any event, the award made was valid and binding upon the defendant. (*Rives-Strong Bldg.* v. *Bank of America*, 50 Cal.App.2d 810 [123 P.2d 942].) The award was based upon an agreement of the parties made upon sufficient consideration, the defendant had agreed to pay the amount involved as soon as it was determined, and no reason appears why he should not be bound by his agreement. There is nothing in the defendant's claim that he is not protected from being forced to again pay the owner of the legal title to the land, since this owner was made a party to this action and the judgment includes a provision that it was entitled to nothing for the use of the land for this year.

The defendant further contends that the court erred in refusing to admit evidence to show that about four months after this suit was filed he offered to pay the full amount due on the trust deeds, with any costs incurred, to the plaintiffs, upon their assigning to him the deeds of trust. It is argued that this evidence was admissible as bearing on the question of the insufficiency of the plaintiffs' security. Aside from any

other consideration, the purported offer was not made until several months after the action was filed and such evidence could not affect or alter the situation which existed at the time the agreement was made in May, 1942. While the offer itself was not admitted, the matter was gone into at considerable length and there is testimony that while the plaintiffs desired to accept the offer they were unable to do so because of intervening circumstances which made this impossible. Neither error nor prejudice appears in this connection.

The only other point raised is that the court erred in allowing interest to the plaintiffs from June 15, 1942, to the date of the judgment. It is argued that this was not allowable since the judgment was for an amount less than that sued for and no demand had been made for any lesser sum. The complaint alleged, on information and belief, that the crops produced a certain amount after the payment of expenses, and judgment was asked for two-thirds of that amount. The defendant had harvested and sold the crops and the exact figures were unknown to the plaintiffs, and no reason appears why interest should not have been allowed on the correct amount from the date when it should have been paid.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.