[No. B037725. Second Dist., Div. Three. July 25, 1989.]

COOPERS & LYBRAND et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
WILFRED SCHWARTZ, Real Party in Interest.

526

COUNSEL

Adams, Duque & Hazeltine, John A. Blue, Berna Warner-Fredman and James D. Houston for Petitioners.

No appearance for Respondent.

Inman, Weisz & Steinberg, Matthew S. Steinberg, Barry M. Weisz, Drew E. Pomerance and Hali E. Ziff for Real Party in Interest.

Thelen, Marrin, Johnson & Bridges, Curtis A. Cole, Jones, Day, Reavis & Pogue, Elwood Lui, Willkie, Farr & Gallagher, Louis A. Craco, Francis J. Menton and Diana B. Simon as Amici Curiae, upon the request of the Court of Appeal.

OPINION

KLEIN, P. J.—Petitioners Coopers & Lybrand, a partnership (Coopers) and Kurt S. Glassman (Glassman) (collectively, Coopers or petitioners), seek a writ of mandate directing respondent superior court to vacate an order overruling their demurrer to real party in interest Wilfred Schwartz's (Schwartz) complaint, and to enter an order sustaining their demurrer without leave to amend.

The issue presented is whether an agreement for a binding audit is included within the definition of an agreement to arbitrate (Code Civ. Proc., § 1280, subd. (a)),[1] so as to confer arbitral immunity (§ 1280.1) upon the auditor.

We conclude agreements to arbitrate include agreements providing for valuations, appraisals and similar proceedings, including audits. A formal hearing and the taking of evidence are not essential to arbitration, which alternatively may consist of a submission of a controversy to an independent examination. Arbitral immunity is coextensive with judicial immunity and extends to arbitrators in appraisals, valuations and similar proceedings, including audits.

However, while Schwartz and Atari agreed to be bound by Coopers's audit, because we cannot say as a matter of law their agreement reflected the intent to conduct an arbitration within the ambit of the statutory

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

scheme, the trial court properly overruled petitioners' demurrer asserting arbitral immunity. (§ 1280.1) The petition therefore is denied.

### FACTUAL & PROCEDURAL BACKGROUND

On August 15, 1988, Schwartz filed a verified first amended and supplemental complaint for professional negligence, breach of fiduciary duty, breach of contract, fraud, defamation and declaratory relief. Schwartz named as defendants Coopers, Glassman, Atari Corporation, a Nevada corporation (Atari), and Does 1 to 20.

Schwartz alleged in relevant part: Coopers is a worldwide accounting firm. Schwartz was the majority shareholder and chief executive officer of The Federated Group, Inc. (Federated). On or about October 4, 1987, Schwartz sold his controlling interest in Federated to FAC Delaware Corp. (FAC), a wholly owned subsidiary of Atari, for a total purchase price of about $35 million. As a result of the transaction, FAC merged with Federated and Federated became a wholly owned subsidiary of Atari.

On October 4, 1987, Atari and Schwartz also entered into a related agreement, appended as an exhibit to the complaint, which provided the parties would retain the independent audit firm of Coopers to conduct an examination of Federated's September 30, 1987, balance sheet in accordance with generally accepted auditing standards. Coopers was to determine whether the balance sheet required certain adjustments which would affect the value of the transaction.

Paragraph 6 of said agreement stated: "The Audit shall be a conclusive determination of the matters covered thereby and shall be binding upon the parties and shall not be contested by any of them and, in the event of non-performance by the parties hereto, the non-breaching party may obtain judgment thereon in any court of competent jurisdiction or exercise any other remedies arising therefrom (and shall be entitled to costs and attorney's fees)."

Coopers, through a staff headed by Glassman, issued its final report on February 29, 1988.

In the first cause of action, Schwartz alleged the petitioners overstated the adjustments by $19 million, so as to require Schwartz to pay Atari $5 million, and petitioners' conduct amounted to professional negligence and malpractice.

In the second cause of action, Schwartz pleaded petitioners breached their fiduciary duty, conspired against him and showed partiality toward Atari, with the expectation of receiving future business from Atari.

Petitioners demurred to the first cause of action on the ground they were acting as arbitrators and were protected by the doctrine of arbitral immunity. As to the second cause of action, they demurred on the ground that when an independent auditor arbitrates a dispute between two parties, there can be no fiduciary relationship between the auditor and one of the parties.

The trial court overruled petitioners' demurrer as to both causes of action and ordered petitioners to answer within 30 days. As a basis for the ruling, the minute order states, inter alia, that *Baar* v. *Tigerman* (1983) 140 Cal.App.3d 979 [211 Cal.Rptr. 426, 41 A.L.R.4th 1004] supported Schwartz's position on the issue of arbitral immunity. Petitioners then sought review of the ruling by way of the instant petition for writ of mandate.

This court ordinarily will not intervene to review rulings on pleadings. (See *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].) However, in view of the significant questions presented with respect to the definition of arbitration and the applicability of arbitral immunity, we directed the issuance of an alternative writ.[2]

CONTENTIONS

Petitioners contend as a matter of law (1) they are entitled to arbitral immunity, and (2) that no fiduciary relationship exists.

DISCUSSION

1. *Standard of appellate review.*

The sufficiency of a pleading and the interpretation of a statute are both questions of law. (*Buford* v. *State of California* (1980) 104 Cal.App.3d 811, 818 [164 Cal.Rptr. 264]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) The interpretation of a written contract or of a purported arbitration agreement is likewise a judicial function unless the interpretation turns upon the credibility of extrinsic evidence. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Chan* v. *Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 642 [223 Cal.Rptr. 838].) On such questions, we are not bound by trial court rulings and are required to make an independent determination.

---

[2] After this matter originally was argued, we deferred submission in order to invite input from amici curiae. The American Arbitration Association, the American Institute of Certified Public Accountants and the Los Angeles County Bar Association Litigation Section filed amicus briefs. The matter then was reargued and submitted.

2. *Legislature broadened definition of arbitration agreement to include agreement calling for valuation, appraisal, or similar proceeding.*

a. *Introduction.*

Section 1280, added in 1961, provides in pertinent part: "(a) 'Agreement' [to arbitrate] includes but is not limited to *agreements providing for valuations, appraisals and similar proceedings. . . .*" (Italics added.)

Section 1280.1, enacted some 24 years later in 1985, states in relevant part: "An arbitrator has the immunity of a judicial officer from civil liability *when acting in the capacity of arbitrator* under any statute or contract. [¶] This section shall remain in effect only until January 1, 1991, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 1991, deletes or extends that date." (Italics added.)

 As indicated, the essential issue before us is whether the subject audit was an arbitration within the meaning of section 1280, subdivision (a), so as to cloak Coopers with arbitral immunity under section 1280.1.

Section 1280, subdivision (a), is ambiguous because it is subject to more than one interpretation. "[A]greements providing for valuations [and] appraisals" may include agreements to submit to an independent examination. Alternatively, the term may be construed as referring only to those agreements wherein the parties submit a disputed matter to a third party who will, following an adjudicatory type proceeding, render an award fixing value.

In order to put this case into perspective and to construe properly the controlling statutes, we deem it necessary to trace the evolution of section 1280, subdivision (a), and section 1280.1.[3]

b. *Historical background.*

California's first arbitration statute was enacted in 1851. (Stats. 1851, §§ 380-389, pp. 111-113.) It was reenacted in 1872 as Code of Civil Procedure sections 1281 to 1290.

---

[3] While *Klubnikin* v. *California Fair Plan Assn.* (1978) 84 Cal.App.3d 393 [148 Cal.Rptr. 563]; *Figi* v. *New Hampshire Ins. Co.* (1980) 108 Cal.App.3d 772 [166 Cal.Rptr. 774]; and *Wasyl, Inc.* v. *First Boston Corp.* (9th Cir. 1987) 813 F.2d 1579, involve appraisal agreements, they do not delve into whether appraisals as used in section 1280, subdivision (a), refers to agreements for an independent examination or whether the statute refers solely to agreements to submit to an *adjudicatory type* proceeding by a third party who is to appraise the subject matter and determine its value.

A distinction between agreements to arbitrate and to appraise has long been observed in California, with the determining factor being whether the agreement provided for an adjudicatory type proceeding or for an independent examination. If an adjudicatory type proceeding were to be held, the agreement was regarded as one for arbitration. If an independent examination were contemplated, the agreement was regarded as calling for appraisement and the statutory procedure was not applicable. (Comment (1928-29) 17 Cal.L.Rev. 643, 647, fn. 26.)

In the early case of *M. E. Church* v. *Seitz* (1887) 74 Cal. 287, 292 [15 P. 839], our Supreme Court stated: "a contract by which the value of property or the amount of damage is, for the purpose of the contract, to be fixed by third persons, *is not a submission to arbitration,* and therefore to enforce it does not trench upon the jurisdiction of the courts. Now, if this is so,—if such a proceeding is not analogous to the investigation by a court of a controversy between the parties,—why need it be conducted according to the rules which govern courts in their investigations? We think that it need not; that the proceeding is a mere appraisement or valuation, which, although binding upon the parties, is not the submission of a controversy to arbitration, and is, therefore, not subject to the rules which govern arbitrators." (Italics added; accord *Dore* v. *Southern Pac. Co.* (1912) 163 Cal. 182, 189 [124 P. 817]; *Thompson* v. *Newman* (1918) 36 Cal.App. 248, 251-252 [171 P. 982].)

Unlike an arbitration, which presupposed a controversy to be tried, an appraisal or valuation was viewed as " 'a mere auxiliary feature of a contract of sale, the purpose of which [was] not to adjudicate a controversy, but to avoid one.' " (*Thompson* v. *Newman, supra,* 36 Cal.App. at p. 251.)

The historical basis for distinguishing between appraisal and arbitration was that under the common law and the pre-1927 statutes, agreements to arbitrate were not specifically enforceable. (Kagel, *Labor and Commercial Arbitration Under the California Arbitration Statute* (hereinafter cited as Kagel) (1950) 38 Cal.L.Rev. 799, 814.) Reasons given at the time to support this dichotomy included (1) arbitration agreements tend to oust the courts of jurisdiction and therefore should not be tolerated, and (2) such agreements are by their nature unenforceable by a court of equity because they call for personal services. (Comment, *supra,* 17 Cal.L.Rev. 643-645.) To avoid the doctrine barring specific enforcement of arbitration agreements, the courts held that if no "controversy" existed, or if no formal hearing and taking of evidence was intended, the arrangement was for *appraisal,* not arbitration, and therefore was *enforceable.* (Kagel, *supra,* at p. 815.)

In 1927, section 1280 was added and provided in relevant part: "A provision in a written contract to settle by *arbitration* a controversy thereaf-

ter arising out of the contract . . . , or an agreement in writing to submit an existing controversy to arbitration . . . , shall be valid, *enforceable* and irrevocable, save upon such grounds as exists [*sic*] at law or in equity for the revocation of any contract; . . ." (Stats. 1927, ch. 225, § 1, p. 404, italics added.)[4]

Although the 1927 statute provided for the specific enforcement of arbitration agreements, the distinction between arbitration and appraisal persisted. For example, in *Rives-Strong Bldg.* v. *Bk. of America* (1942) 50 Cal.App.2d 810, 817 [123 P.2d 942], the court found no arbitration agreement existed, and observed the lease agreement in issue contained "no conditions or restrictions placed upon the persons named, no method of procedure suggested and no hearings or notices mentioned. In fact, the provision is so aptly worded for the purpose of requiring a mere appraisal or valuation that if the word 'appraiser' is substituted for the word 'arbitrator' in the lease no serious contention could be made that the parties intended it to be a statutory arbitration agreement."

Our Supreme Court reiterated these principles in *Bewick* v. *Mecham* (1945) 26 Cal.2d 92, 97-98 [156 P.2d 757, 157 A.L.R. 1277], wherein it stated: " 'Submissions to determine values are of two kinds—first, where the valuers are to examine the property and fix the value in accordance with their own opinion or judgment; second, where they are to afford the parties a hearing, and an opportunity to offer evidence, and are to adjudge the value upon a consideration of the evidence, as well as their own opinion. In cases of the first class, it is usually held that the agreement is not properly a submission to arbitration and is not subject to the rules which govern arbitrators. . . . *Church* v. *Seitz,* 74 Cal. 287 [15 P. 839], was [a] case of this class and it may be considered as establishing this doctrine in this state. [Citations].' "

 c. *1961 revision brought appraisals/valuations within arbitration.*

In 1960, the California Law Revision Commission (the Commission) submitted its recommendations to modify the arbitration law. (Recommendation and Study Relating to Arbitration (Dec. 1960) 3 Cal. Law Revision Com. Rep. (1961) (hereafter Recommendation), G-1.) The Commission's study was authored by Professor Kagel, a recognized expert in the field, who served as research consultant to the Commission. (Recommendation, *supra,* at p. G-25.)

---

[4] The statute was later amended and thereafter was repealed; its substance is continued in present section 1281. (Stats. 1935, ch. 52, § 9, p. 388; Stats. 1961, ch. 461, §§ 1, 2, pp. 1540-1541.)

The Commission observed: "California courts have excluded valuations, appraisals and similar proceedings from the coverage of the arbitration statute on two general grounds: One, that an appraisal does not involve a controversy, and two, that an appraisal is not an arbitration in that the parties contemplated neither a formal hearing nor the taking of evidence. A leading case on this point is the 1945 California Supreme Court case, *Bewick* v. *Mecham* [(1945) 26 Cal.2d 92]. [Fn. omitted.] [¶] To say that there is no controversy when appraisals are resorted to is 'question-begging and unhelpful.' [Fn. omitted.] It is obvious that the parties have found it necessary to resort to a third-party determination of the issue. Clearly a controversy exists." (Recommendation, *supra,* at pp. G-34, G-35.)

With respect to the second objection, namely the lack of either a formal hearing or the taking of evidence, the Commission recognized "even in a true arbitration, the parties may dispense with either a formal hearing or the taking of evidence or both. [Fn. omitted.]" (Recommendation, *supra,* at p. G-35.)

The Commission recommended: "The arbitration statute should be broadened to apply to agreements for appraisals and valuations. The distinction between 'appraisal' and 'arbitration' agreements was created by the courts at a time when the early statutory attempts to provide for enforcement of arbitration agreements imposed cumbersome procedural requirements upon the arbitration process. If it appeared from the nature of the agreement that the parties desired a determination of a particular fact— such as the value of certain property—and did not contemplate a formal proceeding in which evidence would be received, the courts found that the proceeding was an 'appraisal' and not an 'arbitration' in order to hold that the cumbersome statutory formalities were inapplicable. *Since neither the present California arbitration statute nor the statute recommended by the Commission requires the observance of such formalities in the conduct of an arbitration proceeding, there is no longer any reason to preserve the judicially created distinction between these proceedings.*" (Recommendation, *supra,* at pp. G-5, G-6, italics added.)

Toward that end, the Commission drafted a bill revising the arbitration law, which bill was enacted without change and signed into law on May 22, 1961. (See legislative history in Feldman, *Arbitration Modernized—The New California Arbitration Act* (1961) 34 So.Cal.L.Rev. 413, fn. 1.)

Thus, the inclusion in section 1280, subdivision (a), of "agreements providing for valuations [and] appraisals" within the definition of arbitration agreements was in direct response to the Commission's recommendation "that the California statute be amended to include a provision which

expressly extends the coverage of the statute to appraisals and valuation proceedings." (Recommendation, *supra,* at p. G-35.)

Based on this historical overview, we conclude the 1961 statute erased the judicial distinction between agreements to arbitrate disputes and agreements providing for independent examinations by way of valuations, appraisals and similar proceedings, such as audits, and brought such agreements within the arbitration law. As for the requirement that there exist a controversy, it is sufficient the parties *contractually* have agreed to resort to a third party to resolve a particular issue.[5] Because the parties to an arbitration may dispense with a formal hearing and the taking of evidence, the absence of such elements does not impair the status of a proceeding as an arbitration.

3. *Arbitral immunity attaches to appraisal/valuation variety of arbitration.*

█ Judicial officers are not amenable to any civil action for damages when they are acting in their judicial capacity. (*Wyatt* v. *Arnot* (1907) 7 Cal.App. 221, 227 [94 P. 86]; *Perry* v. *Meikle* (1951) 102 Cal.App.2d 602, 605 [228 P.2d 17].) The immunity rule " 'is founded on the necessity of judges being independent in the exercise of their office. . . .' " (*Oppenheimer* v. *Ashburn* (1959) 173 Cal.App.2d 624, 631 [343 P.2d 931].)

█ Courts recognized early on that arbitrators serve in a quasi-judicial capacity (*Burchell* v. *Marsh, et al.* (1854) 58 U.S. 344, 349 [15 L.Ed. 96] ("[a]rbitrators are judges chosen by the parties")), and extended judicial immunity to arbitrators functioning in a judicial capacity. (See, e.g., *Jones* v. *Brown* (1880) 54 Iowa 74 [6 N.W. 140].)

In *Baar* v. *Tigerman, supra,* 140 Cal.App.3d 979, authored by this division, the arbitrator breached his contract to render a timely award. We recognized that an arbitrator enjoys immunity while acting in a quasi-judicial capacity, but held the contractual obligations of an arbitrator to the parties involved also must be given credence. We concluded the policy behind arbitral immunity would not be served by extending arbitral immunity to the failure to render a timely award. (*Id.,* at p. 985.)[6]

---

[5] "Controversy" is broadly defined by statute as "any question arising between parties to an agreement whether such question is one of law or of fact or both." (§ 1280, subd. (c).)

[6] *Baar* highlighted many significant differences between judicial proceedings and arbitrations: The 90-day rule (Cal. Const., art. VI, § 19), requires judges to swear that no cases remain undecided for more than 90 days prior to receiving their monthly salaries. A judge may be censured or removed for persistent failure or inability to perform his or her judicial duties. (Cal. Const., art. VI, § 18.) Trials are public in nature and arbitration involves private action. Judges must follow the law while arbitrators may disregard it. Arbitrators' decisions carry

Senate Bill No. 1001 (1985-1986 Reg. Sess.) was introduced in direct response to *Baar*. The purpose of the legislation was to supersede our holding in *Baar* and to expand arbitral immunity to conform to judicial immunity when the arbitrator is acting under any statute or contract.[7] The bill reflected the legislative policy determination that in view of overwhelming court congestion, complete immunity was essential to encourage persons to serve as arbitrators. The law thus has come a long way from disfavoring arbitration so as not to encroach on the jurisdiction of the courts to the present policy of actively encouraging alternative dispute resolution in order to relieve the burden on the judicial system.

The bill resulted in section 1280.1, which codified arbitral immunity as the "immunity of a judicial officer from civil liability when acting in the capacity of arbitrator under any statute or contract." (§ 1280.1.)

The Legislature expressed some concern about the impact of such sweeping arbitral powers by providing in the statute that the "section shall remain in effect only until January 1, 1991," unless extended. (§ 1280.1.)

In determining the scope of arbitral immunity, section 1280.1 must be read in conjunction with the definition of arbitration, which is broadly defined in section 1280, subdivision (a), as including valuations, appraisals "and similar proceedings," such as audits. While section 1280.1 was intended to extend to arbitrators the same broad immunity enjoyed by judges, as we explain, the statute had the further effect of cloaking arbitrators in independent examinations with the immunity of other arbitrators.

We are mindful that an appraisal or valuation proceeding does not necessarily call for an adjudication in the sense of weighing conflicting evidence or exercising discretion. It is therefore arguable the policy underlying arbitral immunity is not served by conferring immunity upon an independent auditor-arbitrator whose sole task is to determine value in accordance with accounting or appraisal principles. However, one cannot have an arbitration of any type absent an arbitrator. Further, we must presume that in enacting the 1985 immunity provision, the Legislature was aware of the broad definition of arbitration in section 1280, subdivision (a). (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394].)

---

little, if any, precedential value. Arbitration cannot determine rights and obligations of anyone not a party to the arbitration contract and cannot decide any questions not presented by the parties' submission. On the other hand, a judge has the duty to decide all cases coming before the court that are within the court's jurisdiction. (*Baar* v. *Tigerman, supra,* 140 Cal.App.3d at p. 984, fn. 7.)

[7] We have taken judicial notice of various legislative materials in our quest for the legislative intent underlying section 1280.1. (Evid. Code, §§ 452(c), 459.)

We are also mindful that section 1280.1 is an experimental statute, and that the Legislature has contemplated future action in this area.

For these reasons, we read section 1280.1 as conferring full arbitral immunity upon arbitrators in appraisals, valuations and similar proceedings, such as audits, irrespective of the arbitrator's particular role in a given situation.

We recognize that in the instant case, it is accountants who are asserting arbitral immunity. ▮ However, arbitration essentially is a private contractual arrangement between the parties, who are free to delineate their arrangement. (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 479 [121 Cal.Rptr. 477, 535 P.2d 341].) ▮ Thus, arbitral immunity attaches not because of the professional credentials of the arbitrator, nor because of the ethical canons of the profession to which the arbitrator may belong. Rather, arbitral immunity attaches simply by virtue of the fact that a proceeding is deemed to be an arbitration. (§ 1280.1.)

▮ Because arbitral and judicial immunity are coextensive (§ 1280.1), we reject Schwartz's argument that an arbitrator's misconduct or fraud cuts off arbitral immunity. (See *Turpen* v. *Booth* (1880) 56 Cal. 65, 69; *Tagliavia* v. *County of Los Angeles* (1980) 112 Cal.App.3d 759, 761 [169 Cal.Rptr. 467].)[8] The remedy for arbitrator misconduct lies in vacation of the award under section 1286.2.

▮ In addition, because arbitral immunity conforms to judicial immunity, an arbitrator's failure to comply with the procedures for the conduct of arbitration proceedings set forth in section 1282 et seq. does not give rise to a cause of action against the arbitrator, but may provide grounds to attack the award under section 1286.2 on the ground the arbitration failed to meet " 'minimum levels of integrity.' " (*Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 825 [171 Cal.Rptr. 604, 623 P.2d 165].)[9]

---

[8] *Lundgren* v. *Freeman* (9th Cir. 1962) 307 F.2d 104, 117-118, discussing the "quasi-arbitrator" role of an architect, held immunity is qualified and applies only to good faith conduct. *Lundgren* is inapposite as it construes Oregon law, while our analysis of the scope of arbitral immunity must rest on the post-*Baar* adoption of section 1280.1.

[9] It has been argued that certain minimum levels of integrity must be attained before arbitral immunity will attach. Such an approach again would qualify arbitral immunity. We feel compelled to reject this proposal as contrary to the intent of the Legislature in superseding *Baar*.

4. *Coopers's demurrer was properly overruled due to factual question as to whether parties' agreement was for arbitration.*

 a. *Governing principles.*

■ Although arbitration has become a favored method of dispute resolution, "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate." (*Chan* v. *Drexel Burnham Lambert, Inc., supra,* 178 Cal.App.3d at p. 640). Our Supreme Court has cautioned that judicial enthusiasm for alternative methods of dispute resolution "must not in all contexts override the rules governing the interpretation of contracts[,]" as the policy favoring arbitration cannot displace the necessity for a voluntary agreement to arbitrate. (*Victoria* v. *Superior Court* (1985) 40 Cal.3d 734, 738-739 [222 Cal.Rptr. 1, 710 P.2d 833].)

 b. *Analysis of the allegations.*

To reiterate, paragraph 6 of the October 4, 1987, agreement between Schwartz and Atari stated: "The Audit shall be a conclusive determination of the matters covered thereby and shall be binding upon the parties and shall not be contested by any of them . . . ."

■ Coopers urges the parties' agreement to submit to a binding audit by definition constituted an agreement for arbitration so as to cloak it with arbitral immunity.

■ Under petitioners' broad construction of section 1280, subdivision (a), an agreement between a seller and buyer for a binding appraisal of a home, or an agreement retaining an independent auto mechanic for a binding assessment of the condition and value of a used car, would be an unwitting agreement for arbitration, so as to confer immunity upon the real property appraiser or mechanic.

We hold a mere agreement for a binding valuation is not per se an agreement to submit to arbitration. Something more is required, particularly in view of the consequences, including immunity, which flow from the label of arbitration.

Further, if arbitration is what is intended by the parties, the entire applicable statutory scheme comes into play. Arbitration is provided for in the Code of Civil Procedure not only in sections 1280, subdivision (a), and 1280.1, but throughout title 9 of part III of the code. These sections govern, inter alia, the conduct of arbitration hearings (§ 1282.2), the time for

making the award (§ 1283.8), court confirmation of the award (§ 1286), and grounds for vacating the award (1286.2).

We recognize that section 1282 et seq. sets forth procedures for the conduct of arbitration proceedings and that parties are free to "otherwise provide by an agreement" (§§ 1282, 1282.2) and thereby dispense with a formal hearing and the taking of evidence. While parties to an arbitration are free to proceed solely by way of an audit, the mere fact parties agree to an independent binding audit does not establish they agreed to an arbitration and that they elected to dispense with the statutory guidelines.

■■■ In view of the above, we find paragraph 6 of the agreement between Coopers and Schwartz is at least ambiguous with respect to whether the agreement is for a formal arbitration within the ambit of the code, or for a mere binding audit. Due to the ambiguity, in passing upon the sufficiency of the complaint, we must accept as correct Schwartz's allegation as to the meaning of the agreement (*Pigeon Point Ranch, Inc.* v. *Perot* (1963) 59 Cal.2d 227, 233 [28 Cal.Rptr. 865, 379 P.2d 321]), namely, that it simply provided for an audit. Accordingly, the complaint is not demurrable on the ground of arbitral immunity.

■■■ Further, on review of a demurrer, in addition to the allegations of the complaint, we may consider other relevant matters of which the trial court could have taken judicial notice and we may treat such matters as having been pleaded. (*Weil* v. *Barthel* (1955) 45 Cal.2d 835, 837 [291 P.2d 30]; *Helix Land Co.* v. *City of San Diego* (1978) 82 Cal.App.3d 932, 937 [147 Cal.Rptr. 683].) Based thereon, it here appears that at the time of the audit, neither Schwartz nor Atari nor Coopers viewed the event as a submission to arbitration, and the arbitration label was the result of a seemingly after-the-fact perception which came to light only in Coopers's demurrer to the first amended complaint.

We note that on March 4, 1988, Coopers filed suit against Schwartz for breach of contract, alleging it was a third party beneficiary of the October 4, 1987, agreement, and that Schwartz's suit against Coopers constituted a breach of the contractual term that neither party would contest the audit. Coopers therein did not plead it had acted as an arbitrator in conducting the audit.

Further, on April 17, 1988, Atari filed a cross-complaint against Schwartz for breach of contract. Atari did not allege the binding audit was an arbitration.[10, 11]

Moreover, following the conclusion of the audit, neither Schwartz nor Atari filed a section 1285 petition to confirm, correct or vacate the purported "award."

■ Accordingly, having examined Schwartz's allegations and matters judicially noticeable, in view of the necessity for a voluntary agreement to arbitrate, it cannot be said as a matter of law that the provision in paragraph 6 for a binding audit constitutes an agreement for arbitration within the meaning of section 1280, subdivision (a).

Because there exists a factual issue as to whether Schwartz and Atari intended the audit to constitute an arbitration, the demurrer properly was overruled, although not for the reasons stated by the trial court.

c. *Other issues not addressed.*

As indicated, we elected to issue an alternative writ in order to consider whether an audit may constitute an arbitration, and whether an auditor may enjoy arbitral immunity. This we have done.

We decline to address Coopers's argument that an independent auditor retained to resolve a dispute between two parties is not a fiduciary, or any other remaining issues.

## CONCLUSION

Section 1280, subdivision (a), eliminated the distinction between agreements to arbitrate disputes and agreements providing for valuations, appraisals, and similar proceedings, and brought the latter within the arbitration law. The parties may dispense with a formal hearing and the taking of

---

[10] Atari's and Coopers's complaints against Schwartz are judicially noticeable and we treat them as having been pleaded. (Evid. Code, § 452, subd. (d); *Helix Land Co.* v. *City of San Diego, supra,* 82 Cal.App.3d at p. 937.)

[11] The record also includes a copy of Coopers's October 13, 1987, engagement letter, in which it accepted the appointment to examine Federated's balance sheet. The letter contains no suggestion that Coopers would be acting in the capacity of an arbitrator. The letter aims to describe "the nature of [Coopers's] services and the responsibility [Coopers] will assume in connection with the engagement," and explains that Coopers would examine Federated's September 30, 1987, balance sheet in accordance with generally accepted accounting principles, with the objective of rendering an opinion as to whether the balance sheet fairly presented Federated's financial position as of that date.

evidence, and as for the requirement that there exist a controversy, it is sufficient the parties contractually have agreed to resort to a third party to resolve a particular issue.

Further, arbitral immunity is coextensive with judicial immunity and extends to arbitrators in independent examinations, including valuations, appraisals and similar proceedings, such as audits.

While we, like the Legislature, have some apprehension with respect to a sweeping arbitral immunity, we feel compelled to reach this conclusion as it is dictated by our analysis of the controlling statutes.

However, because an agreement for a binding audit is not per se an agreement for arbitration, Schwartz's complaint is not demurrable on the ground of arbitral immunity, which defense will require a threshold factual determination that the parties' agreement was in fact for arbitration.

Where an agreement for an independent examination does not contemplate compliance with the statutory procedures for the conduct of arbitration proceedings (§ 1282 et seq.), and the parties have not agreed to alternate procedures therefor, the arrangement does not approximate a proceeding warranting arbitral immunity.

## DISPOSITION

The alternative writ having served its purpose is discharged. The petition for writ of mandate is denied. Each party to bear respective costs.

Danielson, J., and Croskey, J., concurred.

Petitioners' application for review by the Supreme Court was denied October 12, 1989. Panelli, J., and Kaufman, J., were of the opinion that the application should be granted.