Filed 7/1/25  Nelson v. Huhn CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| KAREN NELSON, Individually and as Trustee, etc., | B330596 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22STCP04212) |
| v. | |
| ERIC HUHN, | |
| Defendant and Appellant. | |

APPEAL from an order and judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Reversed and remanded with directions.

Bidna & Keys, Richard D. Keys and Howard M. Bidna for Defendant and Appellant.

Lagerlof and Robert A. Bailey for Plaintiff and Respondent.

———————————

# INTRODUCTION

Following their parents' death, disputes arose between a brother and sister about the administration of their parents' trust and the value of the trust's assets, including two real properties located in California.  The trust required an equalizing payment be made to the brother by the sister, but the siblings disagreed as to the amount, leading to litigation in the state of Washington. The siblings participated in mediation pursuant to the Annotated Revised Code of Washington (ARCW) section 11.96A.300 conducted by a Washington mediator, resulting in settlement. The settlement term sheet resolved the pending disputes between the siblings, including the appraisal process for determining the value of the two real properties.  The settlement term sheet expressly specified the "valuation shall be based . . . on the highest and best use of the property using the Uniform Standards of Professional Appraisal Practice."

The siblings' mutually agreed-upon appraiser prepared and emailed the reports but, within days, notified the siblings that the report for one of the properties is erroneous and incomplete as a result of a subordinate's mistake.  The sister argued the appraiser's reports are "final and binding" and filed a petition in California requesting that they be confirmed as arbitration awards pursuant to the California Arbitration Act (CAA).  The brother argued he never agreed to arbitration, let alone arbitration under California law, and the appraiser's report is not valid or complete as the appraiser did not utilize the Uniform Standards of Professional Appraisal Practice (USPAP) in preparing the report.

The trial court tentatively denied the sister's motion to confirm the appraisals as arbitration awards but ultimately

2

granted it. The trial court denied the brother's request for reconsideration.

Because we find the parties' settlement term sheet did not amount to an agreement to arbitrate, we reverse the judgment and underlying order granting the motion to confirm. We remand with instructions to the trial court to return the matter to the appraiser to complete the appraisal pursuant to the terms of the parties' settlement term sheet.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *The Trust*

In 1998, Walter and Betty Huhn created The Betty B. Huhn and Walter R. Huhn Trust of 1998 (the Trust). Walter died in 2014. In 2017, Betty—a Los Angeles County resident at the time—amended and restated the Trust. In 2021, Betty died.

The Trust provides that upon the surviving spouse's (Betty's) death, the assets of the Trust are to be distributed to children Eric Huhn and Karen Nelson.

Relevant to this appeal, article seven of the Trust provides that the duplex property located at 3910 East Blvd. in Los Angeles, California (L.A. duplex) shall be distributed to Karen, and the single-family residence located at 665 Chaparro Road in Covina, California (Covina property) shall be distributed to Eric. Article seven section D(1)(c) of the Trust expressly states Betty was "aware that those properties will have different fair market value and want[ed] her total estate to be shared equally between [Karen] and [Eric]. Therefore she require[d] the properties to be appraised on her death and sufficient Trust assets to be given to the beneficiary receiving the lesser valued property above to equalize the gift as distributed. For example, if the [L.A. duplex]

3

is valued at $1,000,000 and the Covina property is valued at $500,000, then $500,000 of Trust assets would be transferred to [Eric] to equalize this distribution."

Article eleven of the Trust contains a "Choice-of-Law Clause": "The validity of this trust and the construction of its beneficiary provisions shall be governed by the laws of the State of California in force from time to time. This paragraph shall apply regardless of any change of residence of a Trustee or any beneficiary, or the appointment of a substitution of a Trustee residing or doing business in another state."

Upon Betty's death, Karen became the successor trustee by operation of the Trust. On April 7, 2021, Karen sent Eric a "NOTIFICATION BY TRUSTEE PURSUANT TO CALIFORNIA PROBATE CODE SECTION 16061.7." In the notification, Karen specified both her address and the "address of the principal place of business of the administration of the trust" as "2011 Drummond Drive, Gig Harbor, WA 98322."

## II. *Washington Litigation and Resulting Settlement*

Disputes arose between Eric and Karen over Karen's administration of the Trust, the distribution of non-real property assets, and the value of the Trust's real property assets.

On November 24, 2021, Eric served Karen with a notice of mediation "pursuant to RCW 11.96A.300"[1] and requested mediation.

On February 1, 2022, Eric initiated litigation against Karen in Pierce County Superior Court in Washington and filed a

---

[1] "RCW 11.96A.300" refers to section 11.96A.300 of the Annotated Revised Code of Washington—"Mediation Procedure," which is in Chapter 11.96 entitled "Trust and Estates Dispute Resolution."

4

petition to compel mediation (*In re Betty B. Huhn Trust*, case No. 22-4-00215-1). Eric served Karen with another notice of mediation per Washington law; the notice specified this "matter must be resolved using the mediation procedures of RCW 11.96A.300 unless the court determines at the hearing that mediation shall not apply pursuant to RCW 11.96A.300(3)."

On February 28, 2022, Eric and Karen agreed to participate in mediation and continued the hearing on Eric's petition. On April 20, 2022, the parties participated in mediation with Stew Cogan in King County, Washington. Mediation continued on April 25, 2022, when the parties entered into and executed the settlement term sheet totaling five pages, which set forth the parties' agreement resolving their disputes over Karen's administration of the Trust.

The settlement term sheet included detailed specifics regarding the agreed upon "process for determination of the value of the LA and Covina properties." New appraisals of the two properties were to be prepared by a mutually agreeable MAI[2] appraiser. The appraiser's "determination of value for the properties shall be final and binding on the parties as to the value of properties." The appraiser "shall conduct the appraisals pursuant to written instructions mutually agreed upon by counsel for parties" including the instruction—"The valuation shall be based on date of death and based on the highest and best use of the property using the Uniform Standards of Professional Appraisal Practice." The instructions also specify that the

---

[2] "MAI" signifies the appraiser is a Member of the Appraisal Institute, considered the top designation in the appraisal profession. (*Forty-Niner Truck Plaza, Inc. v. Union Oil Co.* (1997) 58 Cal.App.4th 1261, 1268, fn. 2.)

parties shall provide the appraiser with information and documents such as "a list of improvements/repairs made since the date of death," "identification of any easements, encroachments, encumbrances, rent control," and "rental income and expenses for 2018–February 5, 2021."The equalization payment must be made by Karen to Eric "[w]ithin 60 days of the finalization of the appraisals." The parties "shall use all reasonable and good faith efforts to cooperate with the other party necessary to complete all the tasks set forth above." Eric "will dismiss the Petition to Compel Mediation within 3 court days of execution of this agreement."

Finally, the settlement term sheet provided "[a]ll controversies, claims, disputes, questions of interpretation and counterclaims arising under or relating to the Settlement Term Sheet . . . shall be first raised via written notice to opposing counsel. If the parties are unable to resolve the dispute informally in 10 days, then the dispute shall be submitted to mediation with Stew Cogan. If the parties are unable to resolve their dispute through mediation, the matter may be submitted to a court of competent jurisdiction."

III.  *Appraisal Reports*

On June 13, 2022, both parties agreed upon and retained Beth Finestone (Finestone), an MAI appraiser and the managing director of Integra Realty Resources, to serve as the appointed appraiser of the L.A. duplex and Covina property. Finestone's engagement letter provided she would appraise the properties as of the date of Betty's death—February 5, 2021. The engagement letter also provided the appraisals would be conducted pursuant to the instructions in the settlement term sheet and referred to the instruction that the valuation be "based on the highest and

6

best use of the property using the Uniform Standards of Professional Appraisal Practice."

Finestone's engagement letter specified that the resulting reports will include "investigations into comparable SFR sale properties that would be relevant in the valuation process." It included a list of "Information Requested for the Appraisal" from the parties including a summary of competed renovations, information concerning the development history of the properties within the last 10 years, and copies of any and all leases in place at the date of value. Finestone's engagement letter stated: "Upon completion of my analysis, I would prepare an appraisal report for each property in full compliance with USPAP."

On October 7, 2022, Finestone served lengthy appraisal reports for the L.A. duplex and the Covina property. The 137-page appraisal report for the L.A. duplex used the sales comparison approach and income approach; it included a summary of comparable rentals as well as comparable improved sales. The report included a reconciliation of the two approaches and provided a "final opinion of value" of $1.35 million. The 100-page appraisal report for the Covina property used the sales comparison approach and included a summary of comparable improved sales; it provided an opinion of value of $730,000. Both appraisal reports state: "The appraisal is intended to conform with the Uniform Standards of Professional Appraisal Practice (USPAP) and the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute."

On October 12, 2022, Eric's counsel emailed Finestone (and copied Karen's counsel), requesting Finestone to "give the reports a second review with particular attention to the highest and best use of the properties, including associated comparables for those

uses, *as that is a term of our Settlement Agreement*." (Italics added.) Eric's independently retained MAI appraiser Kevin Donahue (Donahue) asked Finestone about certain comparable sales that were relevant but not included in the appraisal report. Finestone indicated she would reexamine her appraisal based on this information. Finestone requested information about the L.A. duplex, including "copies of the actual leases that were in place as of the date of value," "a summary of when each tenant that was in place on the date of value, first occupied/leased the space," and whether "the property owner, prior to [the] date of value, filed any paperwork with the Los Angeles Housing Department to enable them to begin the redevelopment process."

On October 18, 2022, Karen's counsel emailed Finestone (and copied Huhn's counsel) and "object[ed] to additional work being done on this."

On October 20, 2022, Finestone emailed both parties' attorneys and stated "information has recently come to light that may have an impact on our opinion of value for the [L.A. duplex]. As a result, we are in the process of reviewing the report and *do not consider our assignment complete. To complete the assignment, we need [Karen's] responses* to the following" and requested copies of "the actual leases that were in place as of the date of value" and other information/paperwork. (Italics added.)

During a telephone call on October 27, 2022, Finestone informed both parties' counsel that her October 7, 2022 appraisal report did not include comparable sales data that is relevant to determining the market value of the L.A. duplex and that its "inclusion . . . would make a material difference in [her] opinion of the market value for the [L.A. duplex]." Finestone confirmed that the second appraiser in her office, Thomas Richardson (also

8

an MAI), assisted her in the research necessary for the appraisals but neglected to include a recent sale of a comparable property in the area.

Karen "refused" to provide the additional information requested by Finestone.

The parties participated in another mediation with Stew Cogan of King County, Washington on November 28, 2022. No resolution was reached.

Two weeks later, on December 14, 2022, Eric filed a civil complaint against Karen in Mason County Superior Court in Washington (*Eric Huhn v. Karen Nelson*, case No. 22-2-98675-23), and sought declaratory relief that Finestone's October 7, 2022 appraisal of the L.A. duplex was not final or binding because Finestone said it was not complete and because the process utilized by Finestone did not comport with the parties' settlement term sheet. Eric requested the trial court order Karen "to provide the information requested by the appraiser and to cooperate in concluding the agreed upon appraisal process and calculation of the equalizing payment owed to Eric."

IV. ***Karen's Petition to Confirm Appraisal***

Concurrently, on November 29, 2022, Karen filed a petition in Los Angeles Superior Court to confirm the October 7, 2022 appraisals as final and binding arbitration awards pursuant to Code of Civil Procedure[3] section 1280 et seq. On December 7, 2022, Karen filed a motion to confirm the appraisals as binding and final awards "pursuant to a settlement agreement between

---

[3] Undesignated statutory references are to the Code of Civil Procedure.

9

the parties." In support of the motion, Karen submitted her own declaration and that of her counsel Robert Bailey.

## V.     *Eric's Request to Stay or Dismiss Karen's Petition*

On January 11, 2023, Eric filed a request to dismiss Karen's petition to confirm the appraisals or, alternatively, to stay proceedings pending resolution of the Washington litigation. He argued, "Instead of allowing the appraiser to complete her appraisal or refund her fees, [Karen] filed the petition in [California] seeking to confirm the incomplete/unfinished appraisals as a final and binding arbitration award under Code of Civil Procedure § 1285." Eric argued Washington law should apply and not California law because "[u]nlike California, the [A]rbitration [A]ct enacted by the State of Washington does <u>not</u> include 'agreements providing for valuations, appraisals, and similar proceedings' within the definition of 'agreements' covered by its arbitration statutes [(Wash. Rev. Code Ann. § 7.04A.010 et seq.)]." In support, he submitted the declarations of Finestone, Donahue, and his counsel Teresa R. Byers.

Finestone's declaration provides:

It was "common practice" for Finestone to "work[] closely with a second appraiser in [her] office to assist [her] in the research necessary for the completion of this appraisal" and MAI appraiser Thomas Richardson's work "was completed under [her] direction." She stated: "Soon after I sent the . . . October 7, 2022 appraisals, I received a phone call from Kevin Donahue, MAI, who inquired as to whether or not I was aware of a recent sale of a property at 3920 East Boulevard. The sale of this property was not within the set of potential comparables that Mr. Richardson or I had identified during the course of our research." Finestone determined that the sale of this property "would have been used

10

as a comparable had I known about it when I prepared my appraisal report; and that the inclusion and analysis of this property sale as a comparable in my appraisal would make a material difference in my opinion of the market value for the [L.A. duplex]." In researching the sale, Finestone "also identified other sales that were not initially identified" and "indicate[d] that the actual market value of the [L.A. duplex] is higher than the opinion that I presented in my report dated October 7, 2022."

As soon as Finestone "realized [the] report dated October 7, 2022 did not contain some of the comparable data that is relevant to the market value of the [L.A. duplex]," she notified both parties' counsel that "the value opinion expressed in [the] report . . . is not valid due to the additional comparable data that I had identified after my original report had been submitted." During her October 27, 2022 telephone call with both parties' counsel, Finestone was very clear that her appraisal report did not include the opinion of market value for the L.A. duplex that she would have given had she "been aware of the relevant sales that [she] now know[s] to exist." Finestone's report "needed to be supplemented with additional data and analysis, and that the opinion of market value needed to be revised." Finestone offered to refund the entirety of the report cost if counsel wanted to obtain a new appraisal, but Karen's counsel "did not want either the corrected report or the refund, and that he considered the current report final and binding."

Donahue's declaration provides:

Donahue reviewed Finestone's October 7, 2022 appraisal report and determined the appraisal "did not discuss numerous other comparable sales, including the sale of 3920 East Boulevard on October 26, 2020, which is two doors down from the

11

[L.A. duplex].” Donahue opined “the October 7th Appraisal is incomplete and must be supplemented with consideration of the other comparable sales before it can yield a proper 'highest and best use' opinion of value.” Donahue further stated Finestone “exceeded her charge, her powers, and authority by failing to adequately consider the market. By not researching or analyzing the other comparable sales in the area, her opinion of value does not satisfy 'the highest and best use' standard of the Uniform Standards of Professional Appraisal Practice, which Finestone was expressly required to adhere to.” Donahue opined rules 1-1, 1-4, and 2-2 of the USPAP were not met, rendering the appraisal report for the L.A. duplex “not a credible report and is not adequate . . . to rely on.”

On January 13, 2023, Eric filed a notice of related case—the Washington litigation.

On January 24, 2023, Eric filed an opposition to Karen's motion to confirm the appraisal, and Karen filed an opposition to Eric's request to dismiss or stay. Both parties filed evidentiary objections.

## VI. *Trial Court Hearing and Ruling*

The hearing on both parties' pending motions took place on February 6 and 10, 2023. Counsel for both parties confirmed having received the court's tentative ruling to deny Karen's motion to confirm the award and to “return[] to the appraiser [the matter] to consider whether she wants to revise her opinion.”

After argument, the trial court found that Finestone “discovered that her subordinate, who actually prepared the appraisal, failed to identify comparables, so that she would get comparables that were required for an MAI appraisal [per USPAP].” “[I]t seems to me here the appraiser says, I made a

12

mistake. And I made the mistake because I relied upon the subordinate. And I merely validated his work. And the professional standards would require that I would look at, not only at duplexes, but also would look . . . at single family homes. So I would like to correct my mistake. That seems to me to be a fair resolution. [¶] Then we look at the California Arbitration Act. And it has a number of statutes which have these generalized statements as to whether or not a mistake can be corrected. I understand the mistake was not corrected within 30 days because Ms. Finestone did not do a new appraisal. But she said how she would do a new appraisal, and for someone experienced in the business, it's probably a matter of 15 more minutes. [¶] So I would think the fair result would be to let her do an appraisal that is consistent with professional standards. If I'm going to have to deal with the wording of the California Arbitration Act to find a basis to permit her to do that, I will spend the time to do it." The court took the matter under submission.

On March 3, 2023, the trial court issued a written ruling granting Karen's motion to confirm the award and denying Eric's motion to dismiss or stay Karen's petition. The trial court stated: "The settlement agreement does not provide that the arbitrator will have an opportunity to consider overlooked information to correct the final award. Nor does the settlement agreement provide an opportunity to the parties to ask the arbitrator to reconsider her final award." Referencing section 1286.6, subdivision (a), the court did "not find that the appraised value discloses 'an evidence miscalculation of figures' nor that the appraiser has made 'an evidence mistake in the description of any person, thing or property referred to in the award.' Referencing section 1286.6, subdivision (c), the award is not

13

'imperfect in a matter of form, not affecting the merits of the controversy.' The correction sought by [Eric] would increase the arbitration value[4] and thus would affect the 'merits of the controversy.'" Finally, the court overruled the evidentiary objections of both parties.

On March 7, 2023, notice of entry of judgment granting the petition to confirm the appraisal was filed.

## VII. *Eric's Motion for Reconsideration or New Trial*

On March 8, 2023, Eric filed a motion for reconsideration of the trial court's March 3, 2023 ruling, or, alternatively, a motion for new trial. Eric argued the court's "tentative ruling was not adopted, despite indications from the [c]ourt of its intent to do so. The [c]ourt in the [o]rder applied California law despite Eric's contention that Washington law should control. The [o]rder should have been submitted to the parties as a revised tentative ruling, and the parties should have been permitted to further present their cases." Eric argued he was "given no opportunity to present his case when the tentative ruling was not adopted, and the [c]ourt in essence reversed itself by applying California law and confirming the appraisal as an arbitration award."

Karen filed her opposition to Eric's motion.

On March 24, 2023, judgment was entered granting Karen's petition to confirm the appraisal per section 1287.4.

## VIII. *Trial Court Hearing on Reconsideration Motion*

The hearing took place on May 3, 2023. Eric argued, "The tentative was in our favor. There was nothing said by your honor during the two hearings on February 6th and February 10th that

---

4    Karen's counsel indicated it is "an $800,000 difference."

14

led me to any other conclusion that the tentative was going to be adopted, which it wasn't." Eric argued, "We were blindsided by this, your honor, and there is a lot of money at stake and it's unfair and it's not in accordance with the intentions of the parents [to have an equal distribution]. This is basically a million-dollar issue. And the trustee [Karen] knows it, because the first appraisal that she got in this matter was for $2.3 million and what she is trying to cram down here is an appraisal that is admittedly an error by the appraiser at $1.35 million." The court took the matter under submission. The record does not include any ruling on the motion.

On May 23, 2023, Eric filed a notice of appeal from the judgment entered March 24, 2023.

## DISCUSSION[5]

Eric contends the judgment and underlying order granting Karen's petition to confirm the appraisal award must be reversed because 1) no agreement to arbitrate existed between the parties; 2) Washington law applies and Washington does not recognize an agreement to a binding appraisal as constituting an agreement to arbitrate; 3) Eric had no hearing or opportunity to be heard—one of the required attributes of any arbitration; 4) Finestone's

_____

[5] We deny Eric's request for judicial notice filed August 2, 2024 as the documents attached to Eric's request are not relevant and unnecessary to our determination of the issues on appeal. (*Mercado v. Superior Court* (2024) 106 Cal.App.5th 1143, 1153, fn. 6; *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [disapproved on other grounds by *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276]; see also *American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 441, fn. 7.)

15

October 7, 2022 appraisal report was not final and not completed in accordance with the express terms of the settlement term sheet and Finestone's engagement letter.

We find Eric's appeal meritorious, warranting reversal of the underlying judgment and order.

## I.    *Standard of Review*

We review de novo the trial court's order granting a petition to confirm an arbitration award.  (*Glaser, Weil, Fink, Jacobs & Shapiro, LLP v. Goff* (2011) 194 Cal.App.4th 423, 433; *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9.)

Statutory interpretation is an issue of law which we review de novo.  (*Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183.)

Where the issue involves the application of law to undisputed facts, we review the matter de novo.  (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018.)  To the extent the court's ruling rests on issues of disputed fact, however, we apply the substantial evidence test.  (*Kacha v. Allstate Ins. Co.* (2006) 140 Cal.App.4th 1023, 1031.)  If the word "substantial" means anything at all, it clearly implies that such evidence must be of ponderable legal significance; obviously the word cannot be deemed synonymous with "any" evidence—it must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.  (*Ibid.*)

## II.    *Applicable Law*

Some similarity exists between an appraisal and arbitration because, in both, the parties select private, unofficial

16

persons to mediate their disputes.  However, the two are not the same.  (4 Am.Jur 2d (2025) Alternative Dispute Resolution, § 3; see generally 6 Cal.Jur.3d (2025) Arbitration and Award, § 24.)  An arbitration adjudicates a controversy while the purpose of an appraisal is to avoid one and to ascertain only such matters as quantity, valuation, and amount.  (6 Cal.Jur.3d, *supra*, Arbitration and Award, § 24; *Bewick v. Mecham* (1945) 26 Cal.2d 92, 97–98; see *Gonzalez v. Gonzalez* (1917) 174 Cal. 588, 594, 604.)  Thus, for example, an agreement for an appraisement of an insurance loss should be distinguished from an agreement to submit a controversy as to the loss to arbitration.  (6 Cal.Jur.3d, *supra*, Arbitration and Award, § 24.)

Contractual arbitration refers to the process whereby parties voluntarily submit their disputes for resolution by impartial third persons instead of by a judicial tribunal provided by law.  (§ 1280, subd. (a) ["agreements providing for valuations, appraisals, and similar proceedings"]; *Herman Feil, Inc. v. Design Center of Los Angeles* (1988) 204 Cal.App.3d 1406, 1414, italics added ["[Contractual arbitration] is a procedure for resolving disputes which arises from contract; it *only comes into play when the parties to the dispute have agreed to submit to it.*"]; see *Coopers & Lybrand v. Superior Court* (1989) 212 Cal.App.3d 524, 537–539 (*Coopers*); Moore & Thomas, 4 Cal. Civil Practice Procedure (2025) Alternative Dispute Resolution, § 26:63.)  Some cases say that whether a contract provision that calls for a binding valuation, appraisal, or similar proceeding is an arbitration agreement depends upon whether the parties intended the proceeding to be arbitration.  (See *Coopers*, at pp. 537–539; *Dore v. Southern Pac. Co.* (1912) 163 Cal. 182, 189;

17

*Thompson v. Newman* (1918) 36 Cal.App. 248, 251–252; 12 Miller & Starr, Cal. Real Estate (4th ed. 2025) § 45:7.)

Notwithstanding the distinctions (*Lewis Food Co. v. Fireman's Fund Ins. Co.* (1962) 207 Cal.App.2d 515, 520), appraisals and valuation proceedings fall within the definition of agreements governed by the rules of arbitration in California. Section 1280, subdivision (a) defines an "agreement" to include "agreements providing for valuations, appraisals . . . ." (§ 1280, subd. (a).) California has a well-established policy favoring arbitration as a speedy and inexpensive means of settling disputes. (See generally § 1280 et seq. [the CAA].) To support this policy and encourage parties to settle their disputes through arbitration, it is essential that arbitration judgments be both binding and final. (*A.M. Classic Construction Inc. v. Tri-Build Development Co.* (1999) 70 Cal.App.4th 1470, 1474.) Thus, as a general rule, California courts will indulge every reasonable intendment to give effect to arbitration proceedings. (*Ibid*.)

There is no required form or terminology for an arbitration agreement, except where statutorily prescribed for particular transactions. (See, e.g., § 1295 [agreements concerning medical malpractice]; § 1298 [disputes arising from real estate contracts].) An agreement need not expressly provide for arbitration and may incorporate by reference an arbitration clause contained in another document. (*Wolschlager v. Fidelity National Title Ins. Co.* (2003) 111 Cal.App.4th 784, 791; *Kleveland v. Chicago Title Ins. Co.* (2006) 141 Cal.App.4th 761, 765 [plaintiff was not bound by arbitration provision that was neither included in preliminary title report nor incorporated by reference into that report].)

18

State law principles govern the formation of contracts. (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 244.) An arbitration provision that is ambiguous is construed against the drafter. (Civ. Code, § 1654; see *Sandquist*, at pp. 247–248.) When a party denies the existence of an arbitration agreement, the party seeking arbitration bears the burden of proof by a preponderance of the evidence. (Moore & Thomas, 4 Cal. Civil Practice Procedure (2025) Alternative Dispute Resolution, § 26:66.) Therefore, the mere presentation of a written arbitration agreement without supporting testimony can fail to establish a valid agreement. (*Ibid*.; *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164–165 (*Gamboa*); see *Remedial Construction Services, LP v. AECOM, Inc.* (2021) 65 Cal.App.5th 658, 663.)

Even though California law favors agreements for arbitration of disputes, " ' "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate." ' " (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744 (*Victoria*).) " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " (*AT&T Technologies. v. Communications Workers of America* (1986) 475 U.S. 643, 648; see *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323 ["The scope of arbitration is . . . is a matter of agreement between the parties"]; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group) (2024) ¶5:2111.) The key factor is whether the terms agreed upon are *intended* as a substitute for litigation. (See, e.g., *Southard v. Newcomb Oil Co., LLC* (2021) 7 F.4th 451, 454–455 [an agreement to participate in "alternative dispute resolution"

19

did not qualify as arbitration agreement because the agreement did not include "common features of classic arbitration"].)

III. *Analysis*

Eric contends the trial court erred in confirming the appraisal reports as arbitration awards for multiple reasons.

First, Eric contends the settlement term sheet that he and Karen executed does not amount to an arbitration agreement. He believes the trial court erred in determining that Finestone's appraisal could be confirmed as an arbitration award "because there was no agreement to 'arbitrate.' . . . Whether the parties to a contract have agreed to arbitration is a threshold question of contract formation and state law." Eric contends he "never agreed that the appraisal . . . contemplated by the Settlement Term Sheet would be subject to confirmation as an arbitration award under the . . . provisions of the California Arbitration Act." He argues if there is any question as to whether the appraisal reports qualify as arbitration awards, that the issue should be determined via Washington law, not California law. He argues: "The Settlement Term Sheet was the result of a mediation conducted in Washington under Washington law that settled litigation initiated in Washington concerning a Washington trustee's administration of a trust in Washington. Washington law therefore controls the issue."

Second, Eric argues the trial court further erred in affirming the appraisal of the L.A. duplex as an arbitration award because the parties never had an opportunity to be heard or to comment on, object, or rebut any of the information relied upon by the appraiser in forming her opinion of value—rendering it *not* an arbitration.

Third, Eric contends Finestone's report failed to include a number of relevant comparable properties "including a property virtually identical to the [L.A. duplex] located *next door* . . . that had sold four months before the valuation date in the appraisal for $2.2 million." Eric argues this rendered Finestone's appraisal/opinion of value incomplete and not final, as it did not satisfy the highest and best use standard of USPAP that Finestone was expressly required to adhere to pursuant to the parties' settlement term sheet. We address these contentions.

A. ***There Was No Agreement to Arbitrate***

The threshold question here is whether the parties' settlement term sheet amounted to an agreement to arbitrate.

The settlement term sheet states that Finestone's appraisals or "determination of value for the properties shall be final and binding on the parties." Regardless of the phrase "final and binding," nothing in the settlement term sheet suggests that Finestone's appraisals may be confirmed as arbitration awards. (See *Coopers & Lybrand*, *supra*, 212 Cal.App.3d at p. 537 ["[A] mere agreement for a binding valuation is not per se an agreement to submit to arbitration. Something more is required."].) Eric argues he never agreed to arbitration. He emphasizes that "[n]o derivation of the word 'arbitrate' appears in the Settlement Term Sheet." Karen argues the settlement term sheet need not use the word "arbitration." Karen is correct. "The fact that a procedure is labeled as 'arbitration' does not mean that it is . . . and a procedure may constitute arbitration even though it does not bear that characterization." (*Elliott & Ten Eyck Partnership v. City of Long Beach* (1997) 57 Cal.App.4th 495, 503 (*Elliott & Ten*); see *Cheng-Canindin v.*

21

*Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 691 (*Cheng-Canindin*).)

A party cannot be required to submit to arbitration any issue that he or she has not agreed to submit. (*Granite Rock Co. v. Teamsters* (2010) 561 U.S. 287, 299; *Lawrence v. Walzer & Gabrielson* (1989) 207 Cal.App.3d 1501, 1505.)  As with any other type of contract, an arbitration contract requires mutual consent of the parties, and their consent to arbitrate must be communicated by each party to the other.  (*Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 381; *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 173.) One party cannot unilaterally impose a duty to arbitrate upon another party without that party's knowing consent.  Although there is a strong public policy in favor of arbitration, there is no public policy requiring persons to arbitrate disputes that they have not agreed to arbitrate.  (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 227; *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59; *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1069.)  A party normally is not obligated to arbitrate unless he or she has expressly agreed to do so by entering into a valid and enforceable written contract with the party who seeks arbitration.  (§ 1281.2; see *Victoria, supra*, (1985) 40 Cal.3d at pp. 738–739; *Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 479; see *Coopers, supra*, 212 Cal.App.3d at p. 537; *Van Luven v. Rooney Pace, Inc.* (1987) 195 Cal.App.3d 1201, 1205–1207.)

Eric next argues there is "no evidence whatsoever that at the time they entered into the Settlement Term Sheet either [Eric or Karen] contemplated that the appraisals to be prepared

would be subject to confirmation as 'arbitration awards' under the [CAA]." It is true. Oddly, neither Karen nor Eric submitted any declaration or evidence in support of their motions and responses in the underlying matter to suggest, let alone establish, whether they consented to or intended the settlement term sheet to also operate as an agreement to arbitrate. This operates against Karen. When a party denies the existence of an arbitration agreement, the party seeking arbitration bears the burden of proof by a preponderance of the evidence. (Moore & Thomas, 4 Cal. Civil Practice Procedure (2025) Alternative Dispute Resolution, § 26:66.) Therefore, the mere presentation of a written arbitration agreement without supporting testimony can fail to establish a valid agreement. (*Ibid*.; *Gamboa, supra*, 72 Cal.App.5th at pp. 164–165; see *Remedial Construction*, *supra*, 65 Cal.App.5th at p. 663.)

### B.     ***Eric Forfeited his Conflict of Law Argument***

Eric argues the trial court erred in applying California law, as he contends this action should be governed by Washington law. He cites to ARCW provisions and Washington case law demonstrating that Washington does not qualify an appraisal report as agreements covered by Washington's arbitration statutes. (See Wash. Rev. Code Ann. § 704A.010 et seq.; *Peterson v. Granger Irr. Dist*. (1926) 137 Wash. 668, 670 ["[T]he contract is not one calling for arbitration, but one calling for appraisement. That there is a distinction between these two methods of determining controversies . . . has been recognized by this court . . . . The rule . . . that there exists in this [Washington] state, in addition to the statutory arbitration, the common law appraisal."].)

23

Karen argues Eric "relied entirely on California law in advancing his argument to vacate the appraisal award" and thus waived his conflict of laws argument.

We agree with Karen.

Nowhere in Eric's January 11, 2023 filings below did he request the trial court to apply Washington law. He filed a request to dismiss Karen's petition to confirm or *alternatively to stay proceedings pending resolution of the Washington litigation*. Eric had argued that Washington law, not California law, should be applied but only in the context of the underlying court staying the action to allow for the Washington litigation to first conclude. Eric did not request the trial court to apply Washington law. He did not provide any conflict of law analysis. He did not reference article eleven of the Trust containing a "Choice-of-Law Clause." He did not discuss full faith and credit in any detail, or analyze why Washington, as opposed to California law, would or should apply. As such, we find Eric waived any choice of law or conflict of law argument on appeal. (See *AICCO, Inc. v. Insurance Co. of North America* (2001) 90 Cal.App.4th 579, 595.)

## C. *There Was No Valid Arbitration as There Was No Hearing or Opportunity to be Heard*

As already mentioned, under California law, agreements providing for "valuations, *appraisals* and *similar proceedings*" are treated as agreements to arbitrate. (§ 1280, subd. (a), italics added; *Mahnke v. Superior Court* (2009) 180 Cal.App.4th 565, 575.) Karen argues the parties' agreement to a "final and binding" appraisal qualified the settlement term sheet as an arbitration agreement and "made [it] subject to the [CAA]."

24

Karen's argument misses the point.  Regardless of whether the CAA applies, we agree with Eric—the trial court erred in affirming the appraisal reports as arbitration awards because the parties *never* had an opportunity to be heard or to comment on, object, or rebut any of the information relied upon by the appraiser in forming her opinion of value—rendering it *not* an arbitration.

Although arbitration may take many procedural forms, a dispute resolution mechanism is *not* an arbitration unless it has *all* of the following attributes: 1) a third party decisionmaker chosen by the parties; 2) a mechanism for ensuring neutrality in the rendering of the decision; 3) *an opportunity for both parties to be heard*; and 4) a binding decision.  (*Cheng-Canindin, supra*, 50 Cal.App.4th at pp. 684–685; *Saeta v. Superior Court* (2004) 117 Cal.App.4th 261, 268; *Elliott & Ten, supra*, 57 Cal.App.4th at p. 503.)  Thus, absent an agreement to the contrary, the parties subject to the arbitration procedure are entitled to be heard, to present evidence, and to cross-examine witnesses.  (§ 1282.2, subd. (d).)

Here, there was no hearing nor "an opportunity for both parties to be heard."  (*Cheng-Canindin, supra*, 50 Cal.App.4th at p. 684.)  Similarly, despite the parties' settlement term sheet having detailed instructions providing for the appraisal process, it fails to include any terms for a hearing or opportunity for the parties to submit evidence or information to the appraiser or to comment on, object or rebut the appraiser's findings before the appraiser's opinion of value is deemed final and binding on the parties.  "Arbitration should give both parties an opportunity to be heard."  (*Id*. at p. 689.)  Thus, while an agreement to an appraisal may be enforceable as an agreement to arbitrate under

25

the CAA, failure to provide a hearing or opportunity to be heard rendered this an invalid or faulty arbitration procedure, warranting reversal.

The significance of affording the parties an opportunity to be heard or to rebut the appraiser's findings makes sense in the parties' case here. That surely would have allowed for a number of issues to be addressed and resolved.

For instance, Karen's failure to provide information and documentation that she was required to supply to Finestone pursuant to the instructions in the settlement term sheet would have been discovered. Finestone had notified the parties that "[t]o complete the assignment, we need [Karen's] responses to the following requests" and then requested copies of the leases in place as of the date of value and other information/paperwork. The record provides that Karen "refused to provide the additional information requested by Finestone and attempted to tender a check to Eric for an equalizing payment" based on the October 7, 2022 appraisal report.

Another issue that would have been addressed was the issue raised via email to Finestone by Eric's counsel on October 12, 2022, requesting Finestone to "give the reports a second review with particular attention to the highest and best use of the properties, including associated comparables for those uses, *as that is a term of our Settlement Agreement*." (Italics added.) The sale of the comparable property located at 3920 East Boulevard on October 26, 2020, which is two doors down from the L.A. duplex, was noticeably missing from Finestone's report. This error would have been promptly brought to Finestone's attention, as it was by Eric's counsel within five days of receiving Finestone's appraisal reports, and addressed.

Eric also provided evidence showing Finestone's appraisal reports did not comply with the settlement term sheet's instruction that the reports be prepared per USPAP. Donahue provided a declaration that opined, "By not researching or analyzing the other comparable sales in the area, *[Finestone's] opinion of value does not satisfy 'the highest and best use' standard of the Uniform Standards of Professional Appraisal Practice, which Finestone was expressly required to adhere to*." Donahue opined that rules 1-1, 1-4, and 2-2 of the USPAP were not met, rendering the appraisal report for the L.A. duplex "not a credible report and not adequate . . . to rely on."

On the other hand, no evidence was provided by Karen demonstrating that USPAP standards were met, and the terms of the settlement term sheet satisfied.

We also take a moment to note that Finestone has stated in writing that the appraisal report was based upon error and she submitted a declaration stating that her October 7, 2022 appraisal was not valid. (*Roehl v. Ritchie* (2007) 147 Cal.App.4th 338, 347–348 [we pay substantial deference to an arbitrator's determination of her own authority; "Any doubts about the arbitrator's power to decide these issues must be resolved in his [or her] favor."].)

For these reasons, we find the parties' settlement term sheet does not amount to an agreement to arbitrate, and the failure to include a hearing or opportunity to be heard rendered the procedure *not* an arbitration.

We therefore reverse the judgment and underlying order granting Karen's petition to confirm. We instruct the trial court to deny Karen's petition and to return the matter to Finestone, or another mutually agreed upon appraiser, if appropriate, to

27

complete the appraisal reports upon receipt of the requested documentation and information from Karen and pursuant to the terms of the parties' settlement term sheet.

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with instructions to deny Kaen's petition and return the matter to the appraiser to complete the appraisal reports pursuant to the instructions provided in the parties' settlement term sheet. Eric Huhn is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.

28